BROWN *v.* TIMMONS and WIFE.

(*Nashville.*   December Term, 1902.)

1. **APPLICATION OF PAYMENTS.**  **Must be made according to**
   **agreement of the parties.**

   Where there is a dispute as to which of two debts, payments
   shall be applied, and the court of chancery appeals has found
   that there was an agreement that the payments should be ap-
   plied to a particular debt, such finding is binding and abso-
   lutely conclusive on this court. (*Post, pp.* 152-154.)

2. **JUDICIAL SALES.  TAXES.  Must be paid out of purchase**
   **money.**

   The purchaser of land at a judicial sale for the enforcement of a
   vendor's lien is entitled to have the property relieved of all in-
   cumbrances for unpaid taxes, which must be paid out of the
   proceeds of sale. (*Post, p.* 154.)

3. **SAME.  Same.  Recovery from beneficiaries of purchase money,**
   **after confirmation of sale, when.**

   Where, after the confirmation of the sale, and the vestiture of
   title in the purchaser, and the delivery of the purchase money
   notes to the beneficiary, the vendor enforcing the lien, who
   alone was entitled to the proceeds, the purchaser in a settle-
   ment with the vendor is entitled to have the purchase money
   abated and the notes credited to the amount of such taxes,
   and where the vendor has been overpaid to recover the same
   from him. (*Post, p.* 154.)

   Cases cited and approved:  Williams v. Whitmore, 9 Lea, 262;
   Childress v. Vance, 1 Baxt., 406.

4. **COURT OF CHANCERY APPEALS.  Its finding of facts, in-**
   **cluding its inferences of fact from evidentiary facts found, is**
   **conclusive.**

Brown v. Timmons.

The supreme court is bound by the finding of facts made by the court of chancery appeals, and also by its inferences of fact from the evidentiary facts found and reported by it. Indeed in its final analysis, it is the inferences or conclusions of fact from the testimony in the record, and the evidentiary facts deduced therefrom by the court of chancery appeals that is binding and conclusive on the supreme court. The supreme court is bound by the findings of the court of chancery appeals in its final deductions and conclusions of fact to the same, or even greater, extent than to its finding of detached or evidentiary facts. (*Post, pp.* 155-156.)

Statute cited and construed: Acts of 1895, ch. 76, sec. 11.

Code cited and construed: Sec. 6322 (S.).

Cases cited and approved: Bond v. Montague, 97 Tenn., 727; Bank v. Evans, 95 Tenn., 705; Hughes v. Powers, 99 Tenn., 486; Ellis v. Insurance Co., 100 Tenn., 181; McQuade v. Williams, 101 Tenn., 334; Trust Company v. Trust Company, 101 Tenn., 545; Sawyers v. Sawyers, 106 Tenn., 597.

FROM DAVIDSON.

Appeal from the Chancery Court of Davidson County.—H. H. COOKE, Chancellor.

GRAFTON GREENE, for Brown.

W. R. CHAMBERS, for Timmons and wife.

MR. JUSTICE WILKES delivered the opinion of the Court.

Complainant sued the defendants on three notes given for real estate, and sought to enforce a lien for their payment by a sale of the real estate. Mrs. Timmons, by next friend, filed an answer as a cross bill, alleging that she had overpaid the notes out of her means, and that Brown was indebted to her on settlement. To this cross bill the husband, as well as Brown, was made a party. A set-off, counterclaim, accounting, and judgment, with general relief, were prayed for.

The cross bill was answered, and an issue was made as to the status of payments and accounts, a reference was ordered, account was stated, and report made, which was confirmed by the chancellor, and resulted in a judgment in favor of Mrs. Timmons for $1,033.58 and costs. Brown appealed. The court of chancery appeals affirmed the chancellor, and Brown appealed to this court.

The main contention of the parties is over a sum of about $4,400, which was paid out of the rents of Mrs. Timmons' real estate. She insists that she was entitled to have this fund applied to her notes, but that Brown applied it, in part at least, to payment of other debts due him by Timmons, which were not a lien upon Mrs. Timmons' property.

The facts of the case as found by the court of chancery appeals, and so far as necessary to be stated, are that Timmons, the husband, was originally indebted to Brown in the sum of $6,476, which was a vendor's lien

upon two storehouses and lots on Market street, in Nashville. Brown had obtained a judgment against Timmons, and decree for the sale of the lots to enforce the lien.

An agreement at this juncture was entered into, by which the lots were to be sold under the decree, and bought by Mrs. Timmons for about $4,000, and for this she was to give her notes, with a lien on the lots. For the balance due Brown of his judgment against Timmons, Timmons was to execute a mortgage on land in Marshall county. The purchase-money notes for the Nashville property were handed over by the clerk and master to Brown, and the costs of that cause were paid by Mrs. Timmons after the sale was confirmed to her and title vested in her to her sole and separate use.

Mrs. Timmons was not bound upon her husband's notes secured by the Marshall county land, nor on two other individual notes of her husband held by Brown. Timmons was insolvent, which fact was known to Brown. Mrs. Timmons owned other real estate in Nashville besides the two storehouses, which she held under the will of her father, Madison W. Jones. Caldwell &. Chapman, real estate agents, had charge of this property, as well as the Market street houses, and rented the same under the supervision of Mr. Timmons as agent and attorney in fact for his wife.

On April 1, 1895, W. H. Timmons, the agent and husband, by the consent and approval of his wife, gave

Brown an order on Caldwell & Chapman in the following words:

"Messrs. Caldwell & Chapman: Please pay to B. F. Brown, out of each month's rent, one hundred dollars, taking his receipt therefor, as long as you have any rents in your hands, and until further orders."

This order does not specify out of the rents of what property it was to be paid, but it was known and understood that it was to be out of Mrs. Timmons' property. On this order Brown receiver $4,400, which he applied in part to Timmons' individual debts. Mrs. Timmons' insistence is that the whole of her rents was by agreement to be applied upon her debt for the Market street lots, and that what was applied to Timmons' individual debts was misapplied. Brown denies this contention, and insists that, no direction being given as to payments and their application, he had a right to apply them as he did.

The court of chancery appeals finds as a fact that Brown knew that Timmons had no property from which rents could be derived, that he was insolvent, and that the rents were to be derived from Mrs. Timmons' property, and he recognized the fact that the rents should be applied to Mrs. Timmons' notes, about which they were speaking.

Upon a petition for further and more explicit findings that court reports: "The conclusion is irresistible that the order on Caldwell & Chapman was given with the understanding and agreement that the money so re-

ceived should be applied to the payment of Mrs. Timmons' notes. We are satisfied that the complainant, Brown, so understood it, and that he accepted the order with this understanding, and was to so credit said notes."

This finding of fact is necessarily conclusive of the main contention in this case—that is, as to how the rents were to be applied—and it is useless to inquire out of what property these rents were derived, and how the property from which they were derived was held. The fact being that they were rents of Mrs. Timmons' property, and were agreed to be paid upon her debts, is absolutely conclusive of the question of their application; and, if they were applied to other debts of Timmons, such application was wrongfully made as to Mrs. Timmons, and Brown is liable to her for all amounts applied otherwise than to the notes of Mrs. Timmons as was agreed upon. It was upon this basis and theory that the decrees of the chancellor and of the court of chancery appeals were based, and those decrees are correct in this respect.

A very able and ingenious argument is made upon the question as to the manner in which and the title by which the real estate owned by Mrs. Timmons was held, and the right of the husband and his creditors to appropriate the rents; but all this is cut off, as to the present case, by the finding of the court of chancery appeals that there was an agreement that the rents received

should be applied to the notes of Mrs. Timmons for the Market street property.

This disposes of the principal contention in the case. There is, in addition, a question of taxes, which is the subject-matter of difference. It appears that when Mrs. Timmons became the purchaser of the Market street property there were taxes unpaid upon it for the years 1893-94, which were a lien upon it. A portion of them Mrs. Timmons paid, leaving a portion unpaid. Her contention is that she, as purchaser, has a right to the property unincumbered of taxes, and that they must be paid out of the proceeds of sale. The amount of unpaid taxes was reported to the court below, and the report was confirmed without exception. It is now insisted that the amount of these taxes should be credited on the purchase money agreed to be given for the property, and it was so directed by the chancellor and court of chancery appeals, and their amount entered into the account between complainant, Brown, and Mrs. Timmons.

We think there was no error in this. Mrs. Timmons was entitled to have the property relieved of all incumbrance for unpaid taxes under her purchase, and, as her notes were turned over to Brown by the clerk and master, and he alone was entitled to the proceeds, she was entitled to have the purchase money abated and notes credited to the amount of such taxes in settlement with him. *Williams* v. *Whitmore,* 9 Lea, 262; *Childress* v. *Vance,* 1 Baxt., 406.

Quite an ingenious argument is made that the finding of the court of chancery appeals should not be treated as final and conclusive in this case, inasmuch as it is an inference, rather than a direct and specific finding of facts. The argument is that, when the court of chancery appeals sets out the testimony or evidentiary findings in its opinion, this court will draw its own conclusion of both law and fact, and in such case the inference or conclusion of the court of chancery appeals will not be held binding on this court. This argument is based upon a misconception of the holding of this court in *Bond* v. *Montague,* 97 Tenn., 727, 37 S. W., 699.

It was not intended by that case to vary or overturn the rule so often announced by this court that the supreme court is bound by the finding of facts made by the court of chancery appeals, and also by its inferences of fact from the evidentiary facts found and reported by them. Indeed, in its final analysis, it is the inference or conclusion of fact from the testimony in the record, and the evidentiary facts deduced therefrom by the court of chancery appeals, that is binding and conclusive in this court. This court is bound by the findings of the court of chancery appeals in its final deductions and conclusions of fact to the same, or even greater, extent than to its finding of detached or evidentiary facts (see Acts 1895, p. 116, c. 76, sec. 11; *Bank* v. *Evans,* 95 Tenn., 705, 34 S. W., 2; *Hughes* v. *Powers,* 99 Tenn., 486, 42 S. W., 1; *Ellis* v. *Ins. Co.,* 100 Tenn., 181, 43 S. W., 766; *McQuade* v. *Williams,* 101 Tenn.,

334, 47 S. W., 427; *Bristol Trust Co.* v. *Jonesboro Trust Co.*, 101 Tenn., 545, 48 S. W., 228; *Sawyers* v. *Sawyers,* 106 Tenn., 597, 61 S. W., 1022), and no doctrine different from this is laid down or intended to be laid down in *Bond* v. *Montague,* 97 Tenn., 727, 37 S. W., 699, when that case is properly analyzed and understood.

This does not, of course, limit or abridge the right, duty, and jurisdiction of this court to review all questions of law involved in the findings and opinion of the court of chancery appeals, and whether that finding be strictly of law alone or of law and fact combined.

It is argued that, as a matter of law, this court should, in the present case, look to the titles and limitations under which Mrs. Timmons held the real estate from which the rents were derived, and determine whether these rents were properly applicable alone to her debts, or generally to debts held by Brown against her and her husband; and this would no doubt be correct but for the finding of the fact by the court of chancery appeals that it was agreed that this rental fund should be applied to the notes of Mrs. Timmons given for the Market street property.   This agreemnt cuts off all inquiry into the source from which the rents were derived, and measures the rights of the parties, and is determinative of the question of the application of the rents, without regard to the source from which they were derived.

We see no error in the decree of the court of chancery appeals, and it is affirmed.